[No. 3398-43405-1. Division One. July 14, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT McKAY PEARSON, *Appellant*.

*Jordan, Brinster & Templeman* and *Joseph H. Brinster,* for appellant.

*Robert E. Schillberg, Prosecuting Attorney,* and *David Patterson, Deputy,* for respondent.

CALLOW, J.—The defendant appeals from an order entered in a filiation proceeding instituted under RCW 26.24. The order provided in part:

> That [he] shall provide a $3,000 bond with sureties acceptable to the Court within one week of the entry of this judgment to ensure his faithful performance of his duties as set out in this judgment.

The defendant contends that RCW 26.24 is unconstitutional in its entirety, claiming that RCW 26.24.090, which permits the court to require a father of an illegitimate child to post bond assuring payment of his support obligation, violates the due process and equal protection clauses of the Fourteenth Amendment. He contends that RCW 26.24.090 denies him the equal protection of the law, asserting that unmarried fathers are required to post bonds to secure support payments while married fathers are not. The defendant claims this alleged discrimination is arbitrary and is not related to a legitimate state interest. He also maintains that the bonding provision does not satisfy due process requirements because unwed fathers are presumed financially irresponsible without a judicial determination.

RCW 26.24.090 provides that after a trial in the superior court on the issue of paternity:

> In the event the issue be found against the accused, or whenever he shall, in open court, have confessed the truth of the accusation against him, he shall be charged by the order and judgment of the court to pay a sum to be therein specified, during each year of the life of such child, until such child shall have reached the age of eighteen years, for the care, education and support of such child, and shall also be charged thereby to pay the expenses of the mother incurred during her sickness and

confinement, together with all costs of the suit, for which costs execution shall issue as in other cases. And the accused shall be required by said court to give bond, with sufficient surety, to be approved by the judge of said court, for the payment of such sums of money as shall be so ordered by said court. Said bond shall be made payable to the people of the state of Washington, and conditioned for the true and faithful payment of such yearly sums, in equal quarterly installments, to the clerk of said court, which said bond shall be filed and preserved by the clerk of said court.

■ The statute says "shall" and, on its face, makes it mandatory that the trial court require the father of an illegitimate child to post a bond as security for payment of his support obligation. However, it has been pointed out in *Spokane County ex rel. Sullivan v. Glover*, 2 Wn.2d 162, 169, 97 P.2d 628 (1940):

> There is no universal rule or absolute test by which it can be positively determined whether a provision in a statute is mandatory or directory. In the determination of that question, as of every other question of statutory construction, the prime object is to ascertain the legislative intent as disclosed by all the terms and provisions of the act in relation to the subject of legislation, and by a consideration of the nature of the act, the general object to be accomplished, and the consequences that would result from construing the particular statute in one way or another. . . .
>
> As a general rule, the word "shall," when used in a statute, is imperative and operates to impose a duty which may be enforced, while the word "may" is permissive only and operates to confer discretion. These words, however, are frequently used interchangeably in statutes, and without regard to their literal meaning. In each case, the word is to be given that effect which is necessary to carry out the intention of the legislature as determined by the ordinary rules of construction.

(Citations omitted.) *See also Burr v. Lane,* 10 Wn. App. 661, 517 P.2d 988 (1974); 2A J. Sutherland, *Statutes and Statutory Construction* §§ 57.01-.26 (C. Sands 4th ed. 1973, Supp. 1974).

 The purpose of a filiation proceeding is to fix paternity and establish the legal obligation of support. The enforcement of the support obligation by requiring that a bond be posted is ancillary to the primary purpose of the statute. RCW 26.24.110 speaks of "such a bond as *may* be required" (Italics ours.), and RCW 26.24.120 states "such security as may be ordered by the court," which indicates a legislative intent to make the bonding provision of RCW 26.24.090 permissive only. The statute, as a grant of judicial power from the legislature, is construed to mean "may" notwithstanding the use of the word "shall." *In re Elliott*, 74 Wn.2d 600, 446 P.2d 347 (1968). RCW 26.24.090 does not state a minimum amount for any bond that is to be posted to secure payments. The trial judge was left with discretion in this regard subject only to the restraint that the exercise of discretion not be abused. A trial judge appropriately could consider in fixing a bond the property and personal ties of the father to the area wherein the child resides, and the attitude and responsibility of the father toward the child as exhibited by his past actions. In some cases the factors present could indicate that no bond was necessary to secure payment, while in others a substantial sum might be needed. Further, the word "shall" is to be construed as permissive when the statute in question can thereby be upheld and a contrary construction would render the statute unconstitutional. *In re Elliott, supra.* We hold that the term "shall" as used in RCW 26.24.090 is to be construed as "may."

 The defendant's due process claim is based primarily on *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972), in which the court held that Illinois' statutory scheme that presumed unwed fathers to be unfit to raise their children violated the due process clause. The court concluded that an unwed father was entitled to a hearing on the question of his fitness as a parent before his children could be taken from him. *See* 49 Wash. L. Rev. 647 (1974). The defendant insists that RCW 26.24.090 presumes him financially irresponsible and therefore requires him to

post a bond without a judicial determination as to this question. The statute, however, allows the issue of a father's willingness and ability to pay to be raised and argued consistent with procedural due process requirements—notice and opportunity to be heard. *See In re Myricks,* 85 Wn.2d 252, 533 P.2d 841 (1975). The defendant was not denied due process.[1]

The defendant also contends that the bonding provision of RCW 26.24.090 violates the equal protection clause of the Fourteenth Amendment. State statutes which place illegitimate children in a different classification than legitimate children are in violation of the equal protection clause. *New Jersey Welfare Rights Organization v. Cahill,* 411 U.S. 619, 36 L. Ed. 2d 543, 93 S. Ct. 1700 (1973); *Gomez v. Perez,* 409 U.S. 535, 35 L. Ed. 2d 56, 93 S. Ct. 872 (1973); *Weber v. Aetna Cas. & Sur. Co.,* 406 U.S. 164, 31 L. Ed. 2d 768, 92 S. Ct. 1400 (1972); *Glona v. American Guar. & Liab. Ins. Co.,* 391 U.S. 73, 20 L. Ed. 2d 441, 88 S. Ct. 1515 (1968); *Levy v. Louisiana,* 391 U.S. 68, 20 L. Ed. 2d 436, 88 S. Ct. 1509 (1968). A custody hearing may not be denied to unmarried fathers when such hearings are available to married parents, divorced parents, and unmarried mothers. To do so is contrary to the equal protection clause of the Fourteenth Amendment. *Stanley v. Illinois,* 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972).

Statutes which do not result in discrimination in fact are not violative of the equal protection clause. In this case, an examination of the statutory scheme relating to the requirement of posting a bond to secure support payments leads us to conclude that married and unmarried fathers are in fact treated the same. The statutory scheme relating to the bonding requirements for securing support indicates that the legislature has not singled out unwed fathers, but treats all fathers equally.

We have noted that RCW 26.24.090 vests in the superior court the discretion following a trial on the issue of paternity to order an unwed father to post a bond to secure the

---

[1]*See State v. Klinker,* 85 Wn.2d 509, 537 P.2d 268 (1975).

support obligation. Other statutes impose a similar burden upon married fathers.[2] RCW 26.21.140, the uniform reciprocal enforcement of support act, provides in part:

> In addition to the foregoing powers, the court of this state when acting as the responding state has the power to subject the respondent to such terms and conditions as the court may deem proper to assure compliance with its orders and in particular:
> (1) To require the respondent to furnish recognizance in the form of a cash deposit or bond of such character and in such amount as the court may deem proper to assure payment of any amount required to be paid by the respondent.

This act was adopted to provide an interstate remedy for the enforcement of support. However, RCW 26.21.210 indicates the act is also applicable when the child and father are in the same state but in different counties. *See Yetter v. Commeau*, 84 Wn.2d 155, 524 P.2d 901 (1974). Thus, at least in situations where the married father is in this state but in a different county than the mother, a court has discretion to require security in the form of a bond. RCW 26.21.140. Further, under the dissolution act an independent action for support may be instituted. RCW 26.09.100. *See generally* Rieke, *The Dissolution Act of 1973: From Status to Contract?*, 49 Wash. L. Rev. 375, 412 (1974). In a proceeding for support pursuant to RCW 26.09, a court may issue a temporary injunction or "an order . . . in such amounts and on such terms as are just and proper in the circumstances." RCW 26.09.060(4). Under RCW 26.09.100, the court is empowered after considering all relevant facts to order support in an amount "reasonable and necessary." If a party fails to comply with the support order, the court is empowered to "grant an appropriate order." RCW 26.09.160.

In interpreting RCW 26.08.110, repealed by RCW 26.09, an implied power has been upheld in the superior court to secure child support payments by a trust fund or life insurance policy. *Bryant v. Bryant*, 68 Wn.2d 97, 411 P.2d 428

---

[2]*But see State v. Spence*, 103 Ariz. 232, 439 P.2d 803 (1968).

(1966); *Abel v. Abel*, 47 Wn.2d 816, 289 P.2d 724 (1955); *Quient v. Quient*, 105 Wash. 315, 177 P. 779 (1919); *Riser v. Riser*, 7 Wn. App. 647, 501 P.2d 1069 (1972). *See generally* Annot., 3 A.L.R.3d 1170, § 6 (1965). In enacting RCW 26.09.100, the legislature is presumed to be familiar with the prior legislation relating to the same subject matter, as well as court decisions construing the former legislation. *Ashenbrenner v. Department of Labor & Indus.*, 62 Wn.2d 22, 380 P.2d 730 (1963); *Hatzenbuhler v. Harrison*, 49 Wn.2d 691, 306 P.2d 745 (1957). There is no indication in the enactment of RCW 26.09 of a legislative intent to alter the prior case law as to support except to restrict the order of support for "any child of the marriage dependent upon either or both spouses" and to preclude marital misconduct as a factor to be considered in awarding support. RCW 26.09.110. *See generally* Rieke, *The Dissolution Act of 1973: From Status to Contract?*, 40 Wash. L. Rev. 375, at 412 (1974). Under the prior case law, a trial court was clearly vested with the discretion to order security for the payment of support, and an equivalent power exists under RCW 26.09. *See* H. Clark, *Law of Domestic Relations* § 15.3 (1968); Annot., 165 A.L.R. 1243 (1946). The extent and type of security has not been clearly defined; however, trust funds and life insurance policies have been deemed appropriate. We find no material or substantive difference between an order requiring a married father to establish a trust fund or maintain a life insurance policy to secure support payments and an order requiring an unmarried father to provide a bond. In either case, such an order may be reasonable and necessary depending upon the circumstances. Accordingly, in a proceeding under RCW 26.09.100, a court may in its discretion order the posting of a bond.

Thus, unwed fathers are not singled out and discriminated against under RCW 26.24.090. Rather, the superior court is empowered to impose a bond on both married and unmarried fathers to secure the payment of support

obligations.[3] There is no distinction in this regard between married and unmarried fathers. Without such discrimination, there can be no claim of a violation of the equal protection clause of the Fourteenth Amendment.

Affirmed.

WILLIAMS, C.J., and ANDERSEN, J., concur.

[3]Illegitimate children are entitled to the same security for payment of their support as are legitimate children.