# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of | No. 47832-3-II |
| KAIN KLAUDE KIRKENDOLL, | |
| Petitioner, | |
| and | |
| KRISTIN ALENE KIRKENDOLL, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, J. — Kain Kirkendoll appeals the trial court's parenting plan, property distribution, and maintenance order in the dissolution of his marriage to Kristin Peterson, formerly known as Kristin Kirkendoll. We conclude that the trial court did not commit error nor did it abuse its discretion. Accordingly, we affirm.

## FACTS

### I. BACKGROUND

Kirkendoll and Peterson were married in 1987 and had one minor child at the time of their dissolution. In 2014, after 27 years of marriage, Kirkendoll filed a dissolution petition.

## II.  FATHER'S RESIDENTIAL TIME

The residential schedule of the parties' minor daughter, K.K.,[1] was an issue at trial.  Under the temporary parenting plan, K.K. lived with Kirkendoll from Sunday morning through Monday evening and again on Tuesdays after she left school until 7:00 PM.  At trial, Kirkendoll requested additional residential time of one extra weeknight and additional time in the summer.  The trial court spoke in camera with 14-year-old K.K., without counsel or the parties, about her residential schedule preferences.  K.K. explained her preferences and concerns regarding the time spent with her father.  The trial court acknowledged K.K.'s concerns but suggested to her that it was important to maintain a relationship with her father.

## III.  WASHINGTON HOME CENTER INC.

In the 1990s, first Peterson, then Kirkendoll, began work as sales managers at Washington Home Center Inc. (WHC), a company that sold manufactured homes.  In 2007, Peterson and Kirkendoll purchased WHC for approximately $1.2 million.  The vast majority of the purchase price reflected inventory cost, but it also included outdoor and indoor equipment and $66,000 of goodwill value.  Shortly thereafter, when the housing market dropped, Peterson took a job at an athletic club.

At trial in June 2015, Kirkendoll's expert witness, Devon Brown, certified public accountant, provided an opinion as to WHC's current value.  Brown opined that WHC was worth approximately $100,000, all of which represented the business's goodwill because the equity balance was a deficit.  Brown calculated WHC's worth by using the business's tax returns from

---

[1] We use the child's initials to provide some confidentiality.

2009 to 2013, the terms of purchase, published data from the manufactured homes industry, and her own observation of the inventory.

On cross-examination, however, Brown admitted that the business appeared to be making a significant turnaround and that based on the 2014 numbers, the business's adjusted net income would be "significantly higher." 1 Report of Proceedings at 47. Brown conceded that there was no reason to believe that the business could not return to prerecession levels of sales.

## IV. TRIAL COURT RULING

The trial court ruled that K.K. would reside primarily with her mother, but it ordered visitation with her father every other Sunday. And the trial court left additional visitation open to agreement between K.K. and Kirkendoll.

The most contested aspect of the trial was the valuation of the family business. Most significantly, the trial court relied on Brown's testimony concerning the valuation of WHC. The trial court's findings acknowledged that Brown had initially valued the business at $100,000 but later conceded that her valuation, which was based on the financial information that Kirkendoll provided, relied primarily on a five-year span that was the worst such period for home sales "since the Great Depression." Clerk's Papers (CP) at 178. The trial court then discussed the business's marked improvement within the year or two before the dissolution and noted that the business appeared to be generating a greater profit than it had in years past and appeared to be poised to continue that trend. In light of these facts, the trial court interpreted Brown's response to similar lines of questioning as "support[ing] a valuation in the $200,000 range." CP at 178.

The trial court adopted Peterson's exhibit 22 "with respect to the division of property and liabilities," including an award to Kirkendoll of the family home and WHC. CP at 179.

Importantly, exhibit 22 did not include an exact valuation of WHC but gave a wide range of $100,000 to $1.2 million to represent the business's value. Using this range, the trial court calculated the total award of assets to Kirkendoll at $293,966 to $1,393,966 and awarded to Peterson $274,104. Additionally, relying largely on Kirkendoll's 2014 tax return, the trial court found that his income that year was $149,293, for a total gross monthly income of $12,439. It found that Peterson's income was $3,866 monthly.

Based principally on these numbers, the trial court found that Peterson had demonstrated a need for spousal maintenance. The trial court reasoned that because it awarded Kirkendoll the family home and business, the only way to compensate Peterson was to award maintenance. It ordered Kirkendoll to pay $3,000 per month to Peterson and stated in its findings that such an award was based both on Peterson's need as well as a method to reach a fair and equitable distribution of the assets and liabilities. The trial court was aware that the award was high but noted that even with the award, Peterson's income was still less than Kirkendoll's, and the trial court believed the award to be fair in light of the uncertain nature of the business. Kirkendoll appeals, challenging several of the trial court's findings and rulings.

ANALYSIS

I. PARENTING PLAN—RESIDENTIAL PLACEMENT

Kirkendoll argues that the trial court abused its discretion when it ordered only one day of visitation every two weeks. He contends that the parenting plan was "restrictive by any definition." Br. of Appellant at 17. We disagree that the trial court abused its discretion.

A. LEGAL PRINCIPLES

Generally, we review a trial court's decisions about parenting plan provisions for an abuse of discretion. *In re Custody of Halls*, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). A trial court abuses its discretion if the decision rests on unreasonable or untenable grounds. *Halls*, 126 Wn. App. at 606. We are reluctant to disturb child placement dispositions because it is the trial court that hears evidence and observes witnesses. *In re Parenting & Support of C.T.*, 193 Wn. App. 427, 442, 378 P.3d 183 (2016). Decisions regarding residential provisions must be made in the best interest of the child after considering the factors set forth in RCW 26.09.187(3). *In re Parentage of J.H.*, 112 Wn. App. 486, 492-93, 49 P.3d 154 (2002).

B. RESIDENTIAL TIME—LIMITATIONS

Before the trial court enters a final parenting plan, RCW 26.09.187(3)(a) requires it to consider several factors for residential placements. RCW 26.09.187(3)(a) also states that "[t]he child's residential schedule shall be consistent with RCW 26.09.191." And RCW 26.09.191(2)(a) provides, in relevant part, that a parent's residential time with the child *shall* be limited if it is found that the parent has engaged in certain harmful or criminal conduct.

Here, Kirkendoll asserts that the trial court's decision to order visitation only on alternative Sundays was an abuse of its discretion because there was no evidence or findings of any potential harm to K.K. under RCW 26.09.191. Kirkendoll notes that the trial court found that RCW 26.09.191 did not apply, yet it decided to limit the amount of visitation despite that determination. Kirkendoll, however, appears to have misinterpreted the relevant statutes.

In addition to setting forth the factors that the trial court must consider before it enters a parenting plan, RCW 26.09.187(3)(b) also provides that trial courts "*may* order that a child

frequently alternate his or her residence between the households of the parents for brief and substantially equal intervals of time if such provision is in the best interests of the child" where the limitations of RCW 26.09.191 are not dispositive. (Emphasis added.) Although RCW 26.09.191 requires a trial court to limit residential time if it makes certain findings, there is no similar authority that *precludes* a trial court from entering a parenting plan that provides for arguably restrictive residential time for a nonprimary parent if such a provision is in the child's best interest.

The aim of the trial court's in camera conversation with K.K. was to determine what kind of residential arrangement was in her best interest. The trial court learned about K.K.'s preferences and concerns regarding visitation with her father. The trial court stated specifically that it had reread RCW 26.09.187 and that it was familiar with the factors that it was required to consider.[2]

Kirkendoll characterizes the visitation ordered as a restriction, but in actuality the parenting plan provides for only a mandatory minimum amount of visitation. It specifically states that Kirkendoll and K.K. are free to agree to any additional residential time so long as Peterson is provided the appropriate advance notice. The trial court imposed this arrangement only after speaking at length with K.K. with her best interest in mind. The trial court recognized that it was important for a 14-year-old like K.K. to have some ability to make her own choices.

We hold that the trial court properly considered the guiding factors under RCW 26.09.187(3) in establishing the parenting plan. It was not required to make express findings under

---

[2] *In re Marriage of Watson*, 132 Wn. App. 222, 130 P.3d 915 (2006), and *In re Marriage of Katare*, 125 Wn. App. 813, 105 P.3d 44 (2004), on which Kirkendoll relies, are distinguishable and therefore unpersuasive.

RCW 26.09.191 because that statute does not apply where there are no allegations of harmful or criminal behavior directed at the child. Accordingly, we hold that the trial court did not abuse its discretion because its residential schedule was not based on unreasonable or untenable grounds.

## C. CONSIDERATION OF THE CHILD'S WISHES

Kirkendoll next argues that the trial court erred because it allowed K.K.'s wishes to control the residential schedule. We disagree that the trial court erred.

The legislature provided several factors to guide trial courts when determining appropriate parenting plan residential schedules. RCW 26.09.187(3). One factor that trial courts may consider is the "wishes of the parents and *the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule*." RCW 26.09.187(3)(a)(vi) (emphasis added). And decisions regarding residential provisions in parenting plans are to be made in the best interest of the child after considering the factors contained in RCW 26.09.187(3)(a). *J.H.*, 112 Wn. App. at 492-93.

Here, the trial court held an in camera discussion with K.K. specifically to take her wishes under advisement so that it could make an informed decision. K.K. was 14 years old at the time, and she proved to be intelligent and articulate during her conversation with the trial court. She was able to understand the trial court's questions, and she provided well-reasoned responses in which she conveyed her thoughts, preferences, and concerns.

Kirkendoll suggests that the trial court abused its discretion because it "completely ceded its authority . . . to a 14-year-old child." Br. of Appellant at 21. But there is no indication in the record that the trial court did so. Furthermore, the trial court was aware that the child's wishes

7

were only one factor it could consider under the circumstances.[3] Kirkendoll has not established that the trial court abused its discretion when it relied at least in part on a statutory factor that the legislature expressly instructed trial courts to consider before setting the residential schedule. We find no error involving the trial court's residential schedule.

## II. DISTRIBUTION OF ASSETS AND MAINTENANCE AWARD

Kirkendoll also challenges the trial court's distribution of assets and maintenance award. Specifically, he makes several arguments related to the trial court's findings of fact and conclusions of law regarding an equitable distribution of the parties' assets and its award of spousal maintenance to Peterson. We hold that the trial court did not abuse its discretion either when it distributed the parties' assets or when it awarded maintenance to Peterson.

## A. DIVISION OF ASSETS

We review the trial court's division of property in dissolution proceedings for an abuse of discretion. *In re Marriage of Urbana*, 147 Wn. App. 1, 9, 195 P.3d 959 (2008). "[T]he trial court has broad discretion in distributing the marital property," and its decision will be reversed only if exercised on untenable grounds or for untenable reasons. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). "The trial court is in the best position to assess the assets and liabilities of the parties" and to determine what constitutes an equitable outcome. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999).

---

[3] Kirkendoll also suggests that the trial court here had a duty to overcome K.K.'s "resistance" to visitation. Br. of Appellant at 21. He cites an inapposite case as support that dealt with an order finding a parent in contempt when she interfered with the residential arrangement under the parenting plan in place. *See In re Marriage of Rideout*, 150 Wn.2d 337, 77 P.3d 1174 (2003). Kirkendoll also makes an unfounded allegation that Peterson could have improperly influenced K.K.'s wishes.

RCW 26.09.080 governs the disposition of property and liabilities in dissolution proceedings. The trial court must divide all the parties' property, community or separate, in a manner "just and equitable" in light of all relevant factors. RCW 26.09.080. Those factors include, at a minimum, the nature and extent of the parties' community and separate property, the length of the marriage, and the economic circumstances of each spouse at the effective date of the property division. RCW 26.09.080(1)-(4). But the trial court need not split the parties' property equally and with "[m]athematical precision." *In re Marriage of Thomas*, 63 Wn. App. 658, 662, 821 P.2d 1227 (1991).

Kirkendoll takes issue with the trial court's finding regarding the valuation of WHC and the fact that the trial court did not state on the record which factors or which method it used to make that determination. He cites *In re Marriage of Hall* in support of this proposition. 103 Wn.2d 236, 247, 692 P.2d 175 (1984). *Hall*, however, is distinguishable from the present case.

In *Hall*, our Supreme Court concluded that the evidence was insufficient to support a trial court's finding that the professional goodwill of one spouse's cardiology clinic should be valued at $70,000. 103 Wn.2d at 246. This was so because experts testified that the practice had no goodwill and the only evidence to the contrary was unsubstantiated statements from the other spouse alleging that the amount of goodwill was at least $100,000. *Hall*, 103 Wn.2d at 246. The *Hall* court reasoned that the $100,000 value was not based upon any analysis or application of any recognized valuation methodology. 103 Wn.2d at 246. Therefore, without further analysis, the evidence was insufficient to support the trial court's valuation finding. *Hall*, 103 Wn.2d at 247.

In contrast, here it was Kirkendoll's own expert, Brown, who testified extensively as to the value of WHC's goodwill. Brown explained exactly how she calculated the $100,000 goodwill

figure, but she subsequently conceded that based on more recent numbers, the goodwill value was likely significantly higher. Also, unlike in *Hall*, the trial court here discussed how it considered the evidence of WHC's valuation as part of its findings and conclusions. The trial court's findings acknowledged that Brown had initially valued the business at $100,000 but later conceded that her valuation, which was based on the financial information that Kirkendoll provided, relied primarily on a five-year span that was the worst such period for home sales "since the Great Depression." CP at 178.

The trial court then discussed the business's marked improvement within the year or two before the dissolution and noted that the business appeared more profitable than it had been in years past and was poised to continue that trend.

In light of these facts, the trial court interpreted Brown's response to similar lines of questioning as "support[ing] a valuation in the $200,000 range." CP at 178. The trial court used Kirkendoll's own low $100,000 figure as the low end of the range in its calculation of the total award of assets to Kirkendoll. The trial court adopted a valuation range of $100,000 to $1.2 million. Accordingly, the facts of this case are distinguishable from those in *Hall*, and we hold that the trial court did not err.[4]

---

[4] There is support for Kirkendoll's argument that a trial court errs when it fails to specifically state which accounting method it relies on to conclude that a business has a certain "goodwill" value. *See In re Crosetto*, 82 Wn. App. 545, 554, 918 P.2d 954 (1996) (failure to state factors and accounting method renders valuation unsupported by sufficient evidence). Here, the trial court discussed a number of the factors it relied on to reach a value for WHC. But it did not specifically refer to this value as goodwill in its findings or state which accounting method it relied on to make this determination. Kirkendoll's expert, however, testified at length that she used several of the generally accepted accounting methods to calculate WHC's value, which she also explained was all goodwill value in her view. The expert was the only person who provided testimony as to WHC's value, and the trial court's findings appear to adopt her view. We conclude that substantial evidence supported the trial court's findings.

## B. FUNDS "TAKEN" FROM WHC

Kirkendoll argues that the trial court erred when it adopted exhibit 22's award of $72,813 as an asset to Kirkendoll. He argues that these funds were actually used to pay taxes and to make payments on the business's note. Because the payments are mandatory, he argues, the trial court should not have considered the payments to be disposable business income "'taken'" by Kirkendoll. Br. of Appellant at 34. Further, Kirkendoll argues that because the trial court also awarded the value of WHC to Kirkendoll, its decision to award the $72,813 figure effectively resulted in the same asset impermissibly being awarded twice. Again, we disagree that the trial court abused its discretion.

Kirkendoll relies on the notion of an impermissible "double dip," citing only *In re Marriage of Barnett* as authority. 63 Wn. App. 385, 386, 818 P.2d 1382 (1991). In *Barnett*, the Barnetts' only major asset was their salvage business. 63 Wn. App. at 386. The trial court awarded the business to the husband but gave the wife both a lien against the business and monthly lifetime maintenance. *Barnett*, 63 Wn. App. at 386.

Division Three of this court held that the maintenance award was essentially a distribution of assets because the husband was selling off existing scrap and not acquiring more and, therefore, the husband's proceeds from the business were from its liquidation and not its operation. *Barnett*, 63 Wn. App. at 388. The court held that the trial court impermissibly distributed the same property twice through the lien and the maintenance award because the distribution of the business had already been effected by the lien to the wife. *Barnett*, 63 Wn. App. at 388.

Here, however, the $72,813 figure represented funds that Kirkendoll apparently withdrew from WHC's business income, allegedly to pay the purchase note and taxes.[5] Unlike the situation in *Barnett*, the trial court awarded that money as an asset to Kirkendoll, the same person to whom it awarded all of the business itself. *Barnett* is distinguishable because there, the business was a diminishing asset, but here, WHC remained a going concern. Peterson was not awarded either the $72,813 or any portion of the business. It was not an impermissible "double dip" as in *Barnett*.

Moreover, Kirkendoll cites no authority to support the proposition that the trial court should not award business income used to pay business taxes or debt as separate property to the very person to whom the trial court also awarded the business itself. Additionally, Kirkendoll's expert testified that a significant amount of the business's long-term debt was paid during 2014, which contributed to an improvement in the overall financial position of the business that year. Kirkendoll does not explain why payments that will ultimately relieve him of the debt associated with the business he now owns solely should not be assigned to him as his separate asset in the dissolution.

Finally, as Peterson points out, Kirkendoll's total income was only one factor in calculating the goodwill valuation of WHC. As his own expert explained, goodwill includes other

---

[5] The exact sequence of events concerning these funds is not clear from the record. The parties alternatively state that Kirkendoll "used" or "withdrew" money from WHC. However, neither party apparently disputes that sometime after the dissolution petition was filed, Kirkendoll used a portion (apparently this $72,000 figure) of the income from WHC to pay expenses related to that business. His argument throughout has been that he must pay these expenses for the business to continue to operate, and, therefore, this amount should not be considered as part of his monthly income because all that is actually available for him to spend is his $6,500 monthly salary. However, the trial court does not appear to have found this claim credible, instead relying on the income shown on the 2014 tax return.

considerations, such as the expectation of continued public patronage. Thus, we do not consider the $72,813 figure as having been awarded twice. For the foregoing reasons, we hold that Kirkendoll's argument that the trial court erroneously adopted exhibit 22 fails.

### C. DISPARATE DISTRIBUTION OF ASSETS

Kirkendoll asserts that the trial court erred because it made a disparate division of the couples' assets without a basis to do so. He supports this argument by relying on the trial court's total award of maintenance to Peterson over the long term. We conclude that the trial court did not abuse its discretion.

"We review a trial court's award of maintenance for abuse of discretion." *In re Marriage of Valente*, 179 Wn. App. 817, 822, 320 P.3d 115 (2014). The trial court has wide discretion to make an award of maintenance. *In re Marriage of Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). The only limitation on the amount and duration of maintenance under RCW 26.09.090 is that the award must be just. *Luckey*, 73 Wn. App. at 209. "We must presume that the court considered all evidence before it in fashioning the order." *In re Marriage of Kelly*, 85 Wn. App. 785, 793, 934 P.2d 1218 (1997). Maintenance is "not just a means of providing bare necessities, but rather a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time." *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984).

We review the trial court's findings of fact for substantial evidence. *In re Marriage of Skarbek*, 100 Wn. App. 444, 447, 997 P.2d 447 (2000). "'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011)

13

(quoting *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)). And we do not "disturb findings of fact supported by substantial evidence even if there is conflicting evidence." *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). We should "'not substitute [our] judgment for the trial court's, weigh the evidence, or adjudge witness credibility.'" *Wilson*, 165 Wn. App. at 340 (quoting *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)).

RCW 26.09.090 governs spousal support and provides that a trial court "may" grant a maintenance order for either spouse "in such amounts and for such periods of time as the court deems just, without regard to misconduct, after considering all relevant factors." RCW 26.09.090(1). The statute identifies a nonexclusive list of factors that includes "[t]he financial resources of the party seeking maintenance, including separate or community property apportioned to him or her," the time it would take to acquire education or training to enable that party to find appropriate employment, "[t]he standard of living established during the marriage, "[t]he duration of the marriage," the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance, and the ability of the other spouse to meet his or her needs while meeting those of the spouse seeking maintenance. RCW 26.09.090(1)(a)-(f).

Here, the trial court calculated the total amount of assets awarded to Kirkendoll as a range from $293,966 to $1,393,966 and the amount awarded to Peterson as $274,104. It then found both that there was a need for maintenance under RCW 26.09.090 and that such an award was *also* necessary to provide a fair and equitable distribution of the assets and liabilities to each party. In so finding, the trial court noted that even with the addition of the maintenance, Kirkendoll's monthly income was still higher than Peterson's.

In Kirkendoll's view, this was improper because if the total award of long-term maintenance at $3,000 a month is included among the assets awarded to Peterson, then the total amount of her award exceeds that of Kirkendoll by over $300,000. Kirkendoll argues that the trial court also did not make specific findings relating to the factors it must consider in making a just and equitable division of assets. And to the extent that the award can be considered need-based maintenance rather than an asset to be divided, Kirkendoll asserts that the trial court erred when it failed to make the necessary findings required by RCW 26.09.090.

Kirkendoll's arguments are unavailing for several reasons. First, Kirkendoll's argument regarding the disparate division of property if the award of maintenance to Peterson is included ignores the fact that the trial court awarded Kirkendoll sole control of WHC, the only income-generating asset that the parties owned. The trial court specifically awarded the maintenance income to Peterson based on Kirkendoll's 2014 reported income, which was significantly higher than Peterson's, and the recognition that the business was continuing to improve and should generate higher profits, and thus more income to him, as time passed. Kirkendoll's argument that Peterson's maintenance income should be added to Peterson's total asset award is disingenuous unless Kirkendoll were also to add his expected income over the same period of time to his asset award.

Kirkendoll continues to assert that the trial court misconstrued his actual monthly income because a significant portion of the income that appears on his 2014 tax return was WHC's income that had to be used to make payments on WHC's note and taxes incurred in running WHC. Consistently, Kirkendoll's argument is that these funds do not amount to disposable income and,

therefore, the trial court's findings erroneously inflate his actual gross monthly income, a closer reflection of which is approximately $6,500.

But as mentioned in the preceding section, Kirkendoll cites no authority to support the notion that business income used to pay business debts and taxes should be considered anything other than income belonging to the sole business owner when that owner claims that amount of income on his tax return. Because Kirkendoll's 2014 tax return is part of the trial record, the evidence was sufficient to persuade a rational, fair-minded person that Kirkendoll's total gross income was the amount listed. *See Wilson*, 165 Wn. App. at 340. To the extent that Kirkendoll challenges the trial court's income finding, that finding is supported by substantial evidence and should not be disturbed even if there is conflicting evidence. *Merriman*, 168 Wn.2d at 631.

Second, a "trial court is not required to place the parties in precisely equal financial positions at the moment of dissolution"; instead, in the case of a long-term marriage such as this, the trial court's objective is "to place the parties in roughly equal financial positions for the rest of their lives." *In re Marriage of Wright*, 179 Wn. App. 257, 262, 319 P.3d 45 (2013), *review denied*, 180 Wn.2d 1016 (2014). Trial courts are permitted to consider postdissolution earnings to accomplish this end. *Wright*, 179 Wn. App. at 262. Furthermore, the trial court may properly consider the property division in awarding maintenance and consider maintenance when it makes an equitable division of the property. *In re Marriage of Estes*, 84 Wn. App. 586, 593, 929 P.2d 500 (1997).

Third, the trial court is not obligated to make specific formal findings regarding each dissolution factor but must consider the respective circumstances of each party. *In re Marriage of*

*Steadman*, 63 Wn. App. 523, 526, 821 P.2d 59 (1991). The trial court's oral rulings, findings of fact, and its letter ruling clearly establish that it did so in this case.

Fourth, to the extent that the trial court did base its decision to award Peterson maintenance primarily on a showing of need rather than to make the division of property just and equitable, it did not abuse its discretion because it specifically stated that it had considered the applicable law and the relevant factors under RCW 26.09.090.[6]

In any event, RCW 26.09.090 does not require the trial court to make specific factual findings on each of the factors listed in RCW 26.09.090(1). *In re Marriage of Mansour*, 126 Wn. App. 1, 16, 106 P.3d 768 (2004). "[F]ailure to list the influence of each factor in its ruling" is not a basis for reversing the trial court's award of maintenance. *Mansour*, 126 Wn. App. at 16. Consequently, Kirkendoll cannot demonstrate that the trial court abused its discretion when it awarded maintenance or made its division of the assets because these rulings were not unreasonable or based on untenable grounds or reasons given the facts and the evidence in the case. Therefore, we affirm the trial court's challenged orders and the trial court's findings of fact and conclusions of law.[7]

---

[6] Kirkendoll relies on the trial court's oral statement during the final orders presentation hearing. But it is clear from the trial court's written findings that it intended the maintenance award to be somewhat hybrid in nature as both need-based maintenance and to place the parties on equal footing regarding the division of assets. As explained above, trial courts may properly do so—but even if the trial court's oral statements or rulings are in conflict with its written findings, the written findings control. *Grundy v. Brack Family Trust*, 151 Wn. App. 557, 571, 213 P.3d 619 (2009).

[7] Kirkendoll argues that the trial court abused its discretion when it ordered him to pay child support and maintenance exceeding his actual income, relying again on his argument that his 2014 tax return did not accurately reflect his actual gross monthly income. We have addressed this argument above, in addition to the argument that maintenance was improper because of how the award skewed the division of assets. We need not address the argument further. Moreover, for the first and only time on the penultimate page of his opening brief, Kirkendoll dedicates one short

### III. ATTORNEY FEES

Peterson argues that she is entitled to an award of attorney fees on appeal. Kirkendoll responds that he has been neither intransigent nor unnecessarily litigious but has appealed because it was necessary to remedy the trial court's inequitable rulings. We decline to award fees.

Under RCW 26.09.140, which governs awards of attorney fees in dissolution actions, "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." "As an independent ground we may award attorney fees and costs based on intransigence of a party, demonstrated by litigious behavior, bringing excessive motions, or discovery abuses." *In re Marriage of Wallace*, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002). A party's intransigence can also support an award of attorney fees on appeal. *In re Marriage of Mattson*, 95 Wn. App. 592, 606, 976 P.2d 157 (1999).

RAP 18.9(a) authorizes an appellate court, on its own initiative or on motion of a party, to order a party or counsel who files a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." Such compensatory damages may include attorney fees. *Kinney v. Cook*, 150 Wn.

---

paragraph to an argument that the trial court erred when it failed to deduct mandatory capital contributions from his income for the purposes of the child support calculation. It appears from the record that this issue was never raised before the trial court, and, therefore, we decline to address it for the first time on appeal. RAP 2.5(a). Finally, Kirkendoll also argues that the trial court erred when it awarded maintenance based on his earning capacity where his future earnings were "**exclusively related**" to the goodwill already distributed. Br. of Appellant at 49. But the trial court's award was based on the business's increasing success and on the future income that Kirkendoll might realize as a result, not on WHC's goodwill. Thus, we decline to address this issue separately.

App. 187, 195, 208 P.3d 1 (2009) (quoting *Yurtis v. Phipps*, 143 Wn. App. 680, 696, 181 P.3d 849 (2008)). "'An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal.'" *Kinney*, 150 Wn. App. at 195 (quoting *Lutz Tile, Inc. v. Krech*, 136 Wn. App. 899, 906, 151 P.3d 219 (2007)).

Here, Peterson asserts that this appeal was frivolous and that Kirkendoll needlessly forced her to expend additional financial resources to defend against it. Before the dissolution trial began, Kirkendoll was found in contempt for failing to add Peterson to WHC's bank accounts and for denying her access to the business's bank statements and records. Kirkendoll also filed motions to stay the trial court's orders pending appeal without filing a supersedeas bond.

Although Kirkendoll's arguments are unpersuasive, his appeal was not one that presented no debatable issues upon which reasonable minds might differ and that is so devoid of merit that there is no possibility of reversal. *See Kinney*, 150 Wn. App. at 195. Nor has Petersen shown intransigence by Kirkendoll that would warrant an award of attorney fees on appeal. Accordingly, we exercise our discretion to deny an award of attorney fees to Peterson.

No. 47832-3-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MAXA, J.