[No. 9016-7-III.   Division Three.   August 13, 1991.]

*In the Matter of the Marriage of (the Estate of)* EUNICE
M. THOMAS, *Appellant, and* MARVIN H. THOMAS,
*Respondent.*

*David M. Bohr,* for appellant.
*Fred O. Montoya,* for respondent.

SHIELDS, J. — This case (as presented to the court by at least the seventh attorney for Mrs. Thomas and the fourth attorney for Mr. Thomas) involves the distribution of community property and liabilities in a dissolution proceeding commenced in August 1985. The matter was tried to the court in July 1987. Mrs. Thomas appealed; however, the appeal was delayed when she filed two bankruptcy petitions. Mrs. Thomas[1] contends the trial court abused its discretion by (1) making an unfair and inequitable property distribution and (2) failing to award her attorney fees. We affirm in part and remand.

Eunice and Marvin Thomas were married October 12, 1940, and separated August 30, 1985. At the time of trial she was 67; he was 68. They accumulated community property worth more than a million dollars during the course of their marriage.

First, Mrs. Thomas contends the court manifestly abused its discretion by departing from its stated goal: to divide the property and liabilities equally. She specifically challenges

---

[1]Before oral argument but after briefs were filed Mrs. Thomas died; her estate was substituted as appellant. For convenience, we refer simply to Mrs. Thomas as appellant.

four matters: (1) Mr. Thomas' receipt of a disproportionate share of the real property, a greater share of the parties' liquid assets, and a monthly income more than three times hers; (2) the court's failure to award her part of the approximately $60,000 in net rental proceeds Mr. Thomas received during separation, for which it found he failed to account; (3) a disproportionate distribution of liabilities; and (4) a ruling the property located at 419 Fourth Street was not fraudulently conveyed to Mr. Thomas' brother in lieu of forfeiture.

Second, Mrs. Thomas contends the trial court should have awarded her attorney fees because she was forced on numerous occasions to institute contempt proceedings to enforce the parties' agreements and the court's orders.

■ The trial court is charged with making a just and equitable disposition of the parties' property and liabilities after considering all relevant factors, including: the nature and extent of community and separate property, the duration of the marriage, and the economic circumstances of each spouse. RCW 26.09.080. Its discretion is broad:

> The trial court's considerable discretion in making a property division will not be disturbed on appeal absent a manifest abuse of that discretion. A manifest abuse of discretion is a decision manifestly unreasonable or exercised on untenable grounds or for untenable reasons.

(Citations omitted.) *In re Marriage of Tower*, 55 Wn. App. 697, 700, 780 P.2d 863 (1989), *review denied*, 114 Wn.2d 1002 (1990).

■ The law is well established that factual issues will not be retried on appeal. The court's findings of fact will be accepted as verities on appeal as long as they are supported by substantial evidence in the record. *In re Marriage of Nicholson*, 17 Wn. App. 110, 114, 561 P.2d 1116 (1977).

As to the first challenge, to the distribution of property, Mrs. Thomas neglects to factor in two substantial debts associated with Mr. Thomas' award of property: the Manry mortgages ($118,864) and mortgages on the "other rentals"

($61,780). Mr. Thomas' net real property award thus equals $494,821[2] while Mrs. Thomas' equals $424,235.[3]

The court's use of Okanogan Street as a dividing line between real property awarded to the parties resulted in a viable allocation of the Thomas Orchards property: Mrs. Thomas received her family home along with the 17.28 acres lying east of the street and Mr. Thomas received the 25.4 acres lying west of the street. The distribution in fact resulted in a difference in value of $70,586 (adjusted to reflect the mortgages), a difference which is not inappropriately disparate under these circumstances.

[2]Mr. Thomas:

| | | |
|---|---|---:|
| 1. | Orchard west of Okanogan Ave. (including Conard house & orchard, Johnson orchard, Van Selus orchard, Van Valkenberg orchard, & Westerberg lot) | $223,300 |
| 2. | Johnson house | 45,900 |
| 3. | Van Selus house | 24,000 |
| 4. | Van Valkenberg house & | 38,000 |
| | mobile home | 9,100 |
| 5. | Manry rentals | 210,000 |
| 6. | "Other rentals" | 106,000 |
| 7. | Three real estate contracts (net equity) | 71,203 |
| 8. | Kansas mineral interest | 200 |
| | Total | $727,703 |
| | Less Manry mortgages | -118,864 |
| | Less "other rentals" mortgages | -61,780 |
| | Less Land Bank loan | -52,238 |
| | Net real property | $494,821 |

[3]Mrs. Thomas:

| | | |
|---|---|---:|
| 1. | Orchard east of Okanogan Ave. (including Home Place orchard, Gambill Acre, Manning orchard & Hammil orchard) | $152,580 |
| 2. | Home Place house | 119,500 |
| 3. | Manning house | 43,900 |
| 4. | Clipp house | 44,900 |
| 5. | Hammil house | 46,000 |
| 6. | Two real estate contracts (net equity): | |
| | 823 Methow | 18,995 |
| | 619 Third | 8,800 |
| | Total | $434,675 |
| | Less Ethyl Moles note on Manning house | -10,440 |
| | Net real property | $424,235 |

Contrary to her assertion regarding the distribution of personal property, Mrs. Thomas was awarded the greater share of the property,[4] with a value which exceeded that awarded to Mr. Thomas[5] by more than $20,000, substantially offsetting the $70,586 difference in real property awards. The relative liquidity of the personal assets is essentially irrelevant here since Mrs. Thomas was awarded the 1987 crop net cash proceeds. Mathematical precision in the distribution of property is not necessary; the awards of real and personal property are substantially proportionate.

In determining the parties' respective monthly incomes,[6] the court and Mrs. Thomas neglected to factor in Mr. Thomas' monthly obligation of $725 on the Federal

---

[4] Mrs. Thomas:

| | | |
|---|---|---|
| 1. | Orchard equipment | $44,250.00 |
| 2. | Bank accounts | 2,682.69 |
| 3. | Insurance policies | 4,913.00 |
| 4. | All 1987 crop proceeds less expenses | 21,812.00* |
| | Total | $73,657.69 |

*This figure is derived from appellant's reply brief, at page 5. No documentation appears of record.

[5] Mr. Thomas:

| | | |
|---|---|---|
| 1. | Bank accounts | $1,372.58 |
| 2. | Keogh account ($5,100 less $325 appraisal fees reimbursed to Mrs. Thomas) | 4,775.00 |
| 3. | Insurance policies | 37,923.00 |
| 4. | Federal Land Bank stock | 3,250.00 |
| 5. | Eastern Washington S&L stock | 170.00 |
| 6. | Rent in arrears up to July 1, 1987 | 6,097.00 |
| | Total | $53,587.58 |

[6] Mr. Thomas:

| | | |
|---|---|---|
| 1. | Social security | $559 |
| 2. | Manry rentals | 950 |
| 3. | Rentals ("other rentals" and farmhouse rentals) | 1,604 |
| 4. | Real estate contracts | 717 |
| | Total monthly income | $3,830 |

Mrs. Thomas:

| | | |
|---|---|---|
| 1. | Social security | $227 |
| 2. | Rentals | 625 |
| 3. | Real estate contracts | 190 |
| | Total monthly income | $1,042 |

Land Bank mortgage.[7] Based on the orchard distribution, Mrs. Thomas argues on appeal Mr. Thomas would receive an additional $675 per month and she would receive only an additional $450.[8] However, the record does not permit us to speculate regarding possible future orchard income. The record also does not provide sufficient information from which a determination of the parties' monthly expenses may be determined. While we acknowledge a disparity between Mr. Thomas' monthly income of $3,105 (adjusted for the Land Bank mortgage) and Mrs. Thomas' monthly income of $1,042, the record is not sufficient to allow us to determine whether the court abused its discretion.

■ As to the second challenge, to the court's failure to award a portion of the net rental proceeds received during separation, the record is sufficient to determine the court abused its discretion. In spite of at least two court orders to provide a complete accounting of all rental income received and applied by Mr. Thomas between the filing of the dissolution petition and the trial, the court acknowledged in its letter decision that no accounting had been provided. It found, as of April 1987, Mr. Thomas

> had received $110,046.10 from rental receipts from the parties' rental properties since the date of separation of the parties and has not shared this money with [Mrs. Thomas] except through the payment of Court ordered temporary maintenance, mortgages, maintenance and repairs of the rental properties, some taxes and insurance.[9]

---

[7]Testimony established $8,700 was due annually on the debt. The record does not contain the terms of the mortgage.

[8]Her projections are based on the court's finding that the entire orchard generated an annual income of $12,000 to $15,000. With an average annual income of $13,500, and a 60/40 orchard property division (25.4 acres/17.28 acres), Mr. Thomas could anticipate $675 monthly and Mrs. Thomas $450.

[9]The $110,046.10 figure was provided by Mr. Thomas' certified public accountant and consisted of $32,838.93 from contract purchasers and $77,207.17 from renters. It is unknown whether the property at 419 Fourth Street, which was sold in lieu of forfeiture while the suit was pending, was included. Assuming it covers the period from September 1985 through April 1987, corresponding payments of approximately $61,320 would have been made, leaving proceeds of

Because no testimony was presented about the actual expenses associated with the rental properties, the court found net income is rental income less mortgage payments. The record before us is not sufficient to determine the exact amount of net rental and contract proceeds. We note, however, Mrs. Thomas neglects to factor in monthly payments on the real estate contracts; thus, the amount unaccounted for is nearer $47,000 than $60,000. Since Mr. Thomas had total control of the real estate income, he should have been required to account for it; any uncertainties resulting from his failure to account should have been resolved against him. The record reveals the court offset the net rental proceeds Mr. Thomas retained against the proceeds from the sale of "495"[10] ounces of silver Mrs. Thomas retained. The court abused its discretion by failing to determine the amount of net rental proceeds and divide them equitably. They constitute an additional fund that should have been awarded.

As to the third challenge, to the disposition of liabilities, Mrs. Thomas was indeed assigned a larger portion of the other community liabilities.[11] On June 10, 1986, a joint stipulation and order was entered which provided for man-

---

about $48,726.10 unaccounted for. Proceeds for May and June 1987 must also be calculated, taking into account the $6,097 in back rent the court found was outstanding at the time of trial.

[10]Testimony established Mr. Thomas sold approximately 3,000 ounces of the couple's 3,467 ounces of silver for $17,354.45. He later gave Mrs. Thomas one-half of the proceeds pursuant to a court order. Mrs. Thomas testified she sold the remaining silver a few ounces at a time during a 6-month period when Mr. Thomas did not make court-ordered monthly maintenance payments. At $5.78 an ounce, which is what Mr. Thomas received, the remaining silver was worth about $2,700.

[11]Mr. Thomas:

| | | |
|---|---|---|
| 1. | Cashmere Valley Bank loan | $20,000.00 |

Mrs. Thomas:

| | | |
|---|---|---|
| 1. | Anita Van Houten (daughter) debt | $37,332.52 |
| 2. | Delinquent property taxes | 3,710.97 |
| | | $41,043.49 |

agement of the 1986 fruit crop on the parties' orchards. Subsequent to that order, the sum of not less than $37,332.52 was borrowed from the parties' daughter, as court appointed custodian of the Thomas Orchards account and 1985 crop proceeds, to bring in the 1986 crop.[12] The order authorized Mr. and Mrs. Thomas to execute a promissory note and secure the loan with the equity in the three properties located at 614 Okanogan, 823 Methow and 619 Third. The debt was a community obligation, incurred by court order during the dissolution proceedings. Settlement or final judgment of the Thomas Orchards lawsuit between Ms. Van Houten and the Thomases, under cause 85-2-00450-1 in Chelan County Superior Court, must necessarily address this debt. An accounting of the 1986 crop proceeds is also required to determine the residual amount of the obligation. On this record, the court abused its discretion by assigning that loan liability to Mrs. Thomas.

Further complicating matters, the property securing the debt was split between the Thomases: Mr. Thomas was awarded the Okanogan Street property, while Mrs. Thomas was awarded the Methow and Third Street properties. A postdecree judgment for $25,287.89 was entered against Mr. and Mrs. Thomas after they defaulted on a note secured by the Third Street property. The intricacies of this matter require a detailed explanation of pre- and postdefault events:[13]

---

[12]Anita Van Houten, as lessee of the Thomas Orchards for the years 1982 through 1985, instituted a lawsuit against her parents for an accounting of the Thomas Orchards earnings and finances for the lease period. The court in the Thomas Orchards lawsuit approved use of up to $50,000 from the Thomas Orchards account to pay the newly appointed orchard manager for expenses incurred in the management of the 1986 crop. The court in the dissolution proceeding ratified the agreement.

[13]Extensive supplementation of the record occurred in conjunction with both parties' motions for reconsideration. The court also has before it an appeal arising out of the judgment creditor's efforts to collect from Mr. Thomas. That appeal, cause 11642-5-III, has been examined for details relating to the present case.

1981 The Thomases purchased real property located at 619 Third Street and executed a deed of trust to secure a promissory note in the amount of $24,099.93 in favor of the sellers, Scott and Patricia Lowers.

1984 The Thomases sold the property to Arnold and Shawnee Duncan and Willis and Ronnie Blackford, who took title subject to the Lowers deed of trust which they agreed to pay. The buyers executed a deed of trust to secure a promissory note in the amount of $8,850.07 in favor of the Thomases.

1985 Mrs. Thomas began dissolution proceedings.

1986 June 5 — The Thomases assigned the Duncan and Blackford deed of trust to Ms. Van Houten.

1987 March 31 — Mr. Thomas' attorney contacted the Blackfords regarding a 5-month delinquency on the Thomas note and a 1-month delinquency on the Lowers note.

April, May and June — The Duncans and Blackfords failed to make payments on the Lowers note.

June 2 — Counsel for the Duncans and Blackfords informed Mr. Thomas through his attorney they intended to rescind the sale because the Thomases had failed to inform them of the balloon payment due July 1 on the Lowers note.

July 1 — Mr. and Mrs. Lowers accelerated the promissory note and made demand on the Thomases for payment of $22,800.

July 1 — Trial began in the dissolution proceeding: Mr. Thomas testified the contract purchasers assumed the underlying obligation to Mr. and Mrs. Lowers, but had stopped making payments on their contract. He indicated they had tendered a cashier's check for two payments, but that was insufficient to bring the contract current.

July 2 — Mr. Thomas testified the Third Street property could possibly be sold for $35,000 if it was repossessed; with the $24,000 mortgage paid off, the Thomases would net $8,800. He also indicated the balloon payment due the previous day had not been paid.

July 6 — Mr. Thomas testified he left the Third Street property off of his proposed distribution schedule because "we're in a little lawsuit there on that and the buyers have assumed the underlying original contract and the net will be somewhere around $8800."

September 20 — A decree of dissolution was entered awarding the Third Street property to Mrs. Thomas subject to Mr. and Mrs. Lowers' obligation. Net equity in the property was shown as $8,800.

November 6 — Ms. Van Houten assigned the Duncan and Blackford/Thomas deed of trust to the law firm of Crane, Stamper for fees she owed them.

December 14 — Having exhausted posttrial motions, Mrs. Thomas filed notice of appeal in the dissolution proceeding.

1988 January 12 — Gary Gosanko sued Mrs. Thomas for attorney fees incurred in the dissolution proceeding.

January 18 — The Duncans and Blackfords deeded their interest in the Third Street property back to the Thomases in lieu of foreclosure.

February 12 — Mrs. Thomas gifted all of her property, except that on Third Street, to her daughter, Ms. Van Houten.

February 26 — Ms. Van Houten contracted to deliver her 1988 fruit crop from the orchards gifted by her mother to Dovex Fruit Company. She eventually did so.

May 19 — Attorney Gosanko amended his complaint against Mrs. Thomas to add Ms. Van Houten for purposes of setting aside the conveyance of property to her.

July — Mr. and Mrs. Lowers began execution proceedings against the property awarded to Mrs. Thomas in the dissolution decree. A sheriff's execution sale was set for September 9, 1988. We note she owned only the Third Street property at this time.

July 18 — On Mr. Thomas' motion, the judge in the dissolution proceeding orally ruled (minute entry) the Lowers judgment would be a community obligation unless it had been addressed otherwise. (Mr. and Mrs. Lowers had garnished $928.42 in two of his bank accounts, and Mr. Thomas sought a court order forcing Mrs. Thomas to pay the judgment and hold him harmless therefrom.)

September 1 — Mrs. Thomas filed a Chapter 11 bankruptcy petition, noting the obligation to Mr. and Mrs. Lowers. The dissolution appeal was automatically stayed.

September 6 — Ms. Van Houten assigned $26,952.15 from her 1988 crop proceeds to Mr. and Mrs. Lowers, who agreed to assign their judgment to her upon receipt of the funds.

September 8 — A minute entry indicates the dissolution court denied Mrs. Thomas' motion to reconsider its ruling on the Third Street property: "Court denied motion, order stands, petitioner receives the property subject to indebtedness on the property." There is no order in the record on appeal, as supplemented.

September 14 to November 25 — Dovex issued checks representing 1988 crop proceeds totaling $27,030.06, payable to Ms. Van Houten, Mr. and Mrs. Lowers and the Lowerses' attorney. Ms. Van Houten endorsed the checks and delivered them to Mr. and Mrs. Lowers.

November 28 — Mr. and Mrs. Lowers assigned their judgment to Ms. Van Houten.

November 29 — Ms. Van Houten reconveyed to Mrs. Thomas all of the orchard property gifted to her in February.

December 8 — Mrs. Thomas amended her Chapter 11 bankruptcy petition to show the assignment of the Lowers judgment to Ms. Van Houten.

1989 September 19 — Ms. Van Houten executed a partial satisfaction of judgment to eliminate the lien on the Third Street property so her mother could sell it.

October 2 — Mrs. Thomas agreed to sell the Third Street property to Sue Duncan for $24,500.

November 27 — The law firm of Crane, Stamper executed a quitclaim deed releasing its lien arising from the November 6, 1987, assignment of the Duncan and Blackford/Thomas deed of trust.

November 28 — Ms. Van Houten released by quitclaim deed the lien arising from the June 5, 1986, assignment of the Duncan and Blackford/Thomas deed of trust to her.

December 20 — Mrs. Thomas completed the sale of the Third Street property.

1990 August 20 — Mrs. Thomas filed a Chapter 12 bankruptcy petition, showing the Lowers judgment owing to Ms. Van Houten.

September 24 — Ms. Van Houten filed a proof of claim for the Lowers judgment.

November — Ms. Van Houten instituted supplemental proceedings against Mr. Thomas to execute on the Lowers judgment.

1991 January 6 — Mrs. Thomas died. Her estate was substituted in the dissolution appeal. Ms. Van Houten is her sole heir.

The court's award to Mrs. Thomas of $8,800 net equity in the Third Street property was illusory, as there was no equity to be awarded. Likewise, the award of the Methow Street property to Mrs. Thomas and the Okanogan Street property to Mr. Thomas did not reflect the secured interest of Ms. Van Houten as custodian of the Thomas Orchards accounts, taken pursuant to court order. All three awards must be set aside pending resolution of Chelan County Superior Court cause 85-2-00450-1.

Finally, Mrs. Thomas was assigned the delinquent property taxes on real property awarded to her. She asserts Mr. Thomas was ordered to bring all property taxes current, but this is somewhat inaccurate. On March 30, 1987, the court entered a show cause order allowing, but not requiring, use of Keogh account funds for payment of real property taxes if the dissolution matter was not resolved before the taxes became delinquent. At the time of the order, 1985 and 1986 taxes were already delinquent on those parts of the orchard Mr. Thomas wanted the court to award to Mrs. Thomas. On June 3, 1987, the court specifically held the delinquent 1985 and 1986 taxes, totaling $3,711, were to be held in abeyance; Mr. Thomas was ordered to pay the first half of 1987 taxes on all properties. This was one of the few orders Mr. Thomas followed. Upon dissolution, the court entered a specific finding that Mr. Thomas paid the real property taxes and assessments on all of the real property except that property lying east of Okanogan Street with community funds. Under these circumstances, it was an abuse of discretion to require Mrs. Thomas to assume the back taxes on property awarded to her. The court should have required Mr. Thomas to pay one-half of her taxes, just as she, in effect, paid one-half of his.

As to the fourth challenge, to the ruling the property located at 419 Fourth Street was not a fraudulent conveyance, the court found both parties deeded that property to Mr. Thomas' brother in lieu of foreclosure in the normal

course of business. This finding is supported in the record by the court's order authorizing the parties to forfeit if they agreed to do so, but indicating the court would otherwise award the asset at trial. Mrs. Thomas testified she quitclaimed her interest, as did Mr. Thomas. There was no error.

As to her second contention, regarding attorney fees, Mrs. Thomas asserts the trial court should have made an award because a large portion of her attorney fees was necessitated by Mr. Thomas' intransigence; however, Mrs. Thomas neglects to factor in the numerous awards of attorney fees revealed in the record. Before trial, Mr. Thomas was found in contempt three times, never made a maintenance payment without being forced, and refused to provide a courtordered accounting of rental income. From the court's orders, we discern Mr. Thomas was ordered to pay $14,000 in attorney fees. After trial, Mrs. Thomas was again forced to obtain court orders twice compelling Mr. Thomas to pay rents and mortgage obligations mandated by the decree of dissolution and was awarded an additional $500 in attorney fees. We are unable to determine whether any of the courtordered fees were in fact paid. Mrs. Thomas is entitled to judgment in the amount of any unpaid attorney fees.

In its letter decision, the court gave its reason for denying an award of additional attorney fees and costs:

> Both parties have been less than faithful in following the orders of the Court resulting from their frequent show cause hearings. Since both parties are receiving relatively equal portions of the community [property] in this dissolution, the Court finds that they have equal ability to pay attorney's fees, and attorney's fees will be the obligation of the party that incurred the same.

The decision is discretionary; we find no abuse as to additional attorney fees.

Both parties request attorney fees on appeal pursuant to RCW 26.09.140. However, neither party submitted an affidavit supporting current need as required by RCW 26.09-

.140 and RAP 18.1(c); *see also In re Marriage of Sanborn*, 55 Wn. App. 124, 130-31, 777 P.2d 4 (1989). Attorney fees are denied.

The property distribution of the Superior Court is affirmed, except for the three real estate contracts. The case is remanded for: an accounting and entry of judgment on behalf of the estate of Mrs. Thomas for one-half of the net rental proceeds collected by Mr. Thomas during separation, plus interest; entry of an equalizing judgment on behalf of the estate of Mrs. Thomas for one-half of the back property taxes she was required to pay on her property award, plus interest; and entry of judgment on behalf of the estate of Mrs. Thomas in the amount of any unpaid court-ordered attorney fees. Distribution of the two real estate contracts, the sale proceeds from the third, and reallocation of the Lowers judgment must be held in abeyance pending an accounting of the Van Houten custodial advance of $37,332.52. Following resolution of Chelan County Superior Court cause 85-2-00450-1 and an accounting of the advance secured by the Thomases' interests in all three real estate contracts, to the extent any amount is owed by the Thomases, it is to be allocated to the parties equally. Sale proceeds from the Third Street property and the associated Lowers judgment, and the Thomases' actual equity in the Methow and Okanogan real estate contracts can then be reallocated between Mr. Thomas and the estate of Mrs. Thomas to effectuate the court's goal of an equal division of assets and liabilities.

GREEN, C.J., and MUNSON, J., concur.

After modification, further reconsideration denied December 31, 1991.