FILED
COURT OF APPEALS
DIVISION II

2013 MAY 14 AM 9: 01

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re Marriage of: | No. 42453-3-II |
| BRYAN LEE ESTILL, | |
| Appellant, | |
| and | |
| EVELYN MATEO ESTILL, | UNPUBLISHED OPINION |
| Respondent. | |

PENOYAR, J. — Bryan Estill filed for dissolution of his marriage to Evelyn Estill. He appeals the final parenting plan designating Evelyn[1] as the primary residential parent of their child, IE. He argues that (1) the parenting plan is inconsistent with RCW 26.09.184, (2) the trial court misapplied RCW 26.09.187, (3) the trial court erred when it found that Evelyn did not engage in abusive use of conflict or alienation, and (4) the trial court erred by awarding attorney fees to Evelyn. Though the parties presented conflicting evidence to the trial court on each of these issues, substantial evidence supports each of the trial court's findings, which, in turn, support the trial court's conclusions. We therefore affirm.

## FACTS

Bryan and Evelyn married in April 2005. Their child, IE, was born in August 2005 in the Philippines. After IE's birth, Bryan left the Philippines but would occasionally return to visit IE and Evelyn. In June 2008, Evelyn moved to Washington, leaving IE in her relatives' care. Bryan was living and working in British Columbia at the time. Evelyn brought IE to live with her in Washington in January 2010.

---

[1] For clarity, we refer to the parties by their first names. We intend no disrespect.

Bryan filed for dissolution on February 5, 2010. Between this date and the eventual trial, both parties filed multiple motions and the trial court amended the temporary parenting plan several times. The initial temporary parenting plan, entered on May 6, 2010, provided that IE would reside primarily with Evelyn and visit Bryan every other weekend. At that time, the trial court also appointed a guardian ad litem (GAL).

Evelyn twice violated the parenting plan. The first time, she misunderstood the parenting plan's wording, resulting in IE missing a holiday with Bryan. The second time, Evelyn refused to allow Bryan to take IE for his scheduled residential time, producing a doctor's note stating that IE was too sick to travel. Bryan filed a contempt motion against Evelyn for violating the parenting plan. The trial court found Evelyn in contempt and awarded Bryan attorney fees but reserved determination of the amount for trial.

In response to the GAL's report filed after the contempt hearing, the trial court modified the temporary parenting plan, granting Bryan primary residential status and allowing Evelyn supervised residential time one Saturday a month. The trial court restricted Evelyn's residential time because it found that she "engaged in a pattern of alienation of the child's relationship [with] the father that is detrimental to the child's well-being" and it was concerned that she was a flight risk. Clerk's Papers (CP) at 570. This parenting plan remained in effect until trial.

At trial, Bryan argued that Evelyn was restricting his access to IE and manipulating IE against him. He presented e-mails from Evelyn stating that she was going to "nurture [IE] to hate [him]" and that she was going to terminate his parental rights. Report of Proceedings (RP) at 102. Evelyn admitted that she wrote some, but not all, of the e-mails. Bryan testified that the residential time exchanges were long and difficult because Evelyn allowed IE to hide behind her rather than encouraging IE to go with him. He also introduced recordings of two phone

conversations between Evelyn and IE where Evelyn repeatedly disparages Bryan and asks IE which parent he loves more.

The GAL testified that she did not believe Evelyn was intentionally alienating IE but that she believed both parties had engaged in abusive use of conflict by filing excessive motions. Dr. Daniel Rybicki, the psychologist Evelyn hired to perform her psychological assessment, testified that Evelyn discussed "inappropriate" topics with IE during the recorded phone calls but that it was common for parents involved in parenting disputes to make negative comments about each other. RP at 197. He also noted that Evelyn's derogatory statements, rather than eliciting an alienating response, caused IE to become upset at her, not Bryan. He concluded that nothing he observed in his assessment raised concerns about a parenting deficit, such as alienation.

Bryan also argued at trial that Evelyn was not adequately addressing IE's developmental needs. He testified that when he visited IE in the Philippines, the four-year-old was still drinking a bottle and appeared to be unable to feed himself. He further testified that, during his first residential times, he had difficulty convincing IE to eat. However, he said that IE is now eating well and feeding himself, and the GAL testified that she did not have any concerns about IE's nutrition.

The trial court[2] concluded that the temporary parenting plan was a "gross deviation" from the statutory analysis and that the statutory factors weighed heavily in Evelyn's favor. CP at 1014. The trial court noted that IE was born in the Philippines, speaks the same dialect as his mother, and was raised by his maternal relatives. It found that Evelyn had the "strongest most nurturing relationship" with IE and that she was meeting his developmental and emotional needs

---

[2] Judge Orlando presided over the trial, but the previous motions were heard and considered by other judges or commissioners.

3

and caring for his physical safety. CP at 1047. The trial court also found that, although Evelyn was angry at Bryan, her actions did not establish abusive use of conflict or parental alienation.

The trial court approved the final parenting plan, which provided that IE would reside primarily with Evelyn and visit Bryan every other weekend, with holidays and summers evenly split. The plan allows for a more generous schedule if Bryan moves to Pierce County. The trial court also awarded Evelyn $3,500 in attorney fees. This amount included an offset for the fees Evelyn owed Bryan as a result of the contempt order. Bryan appeals.

## ANALYSIS

### I.    STANDARD OF REVIEW

We review a trial court's decisions in a final parenting plan to determine if the decisions were manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). Placement decisions are based on the child's best interests, as found at the time of trial. RCW 26.09.187(3)(a); *In re Marriage of Littlefield*, 133 Wn.2d 39, 52, 940 P.2d 1362 (1997). The trial court has a unique opportunity to observe the parties; thus, we are "'extremely reluctant to disturb child placement dispositions.'" *In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001) (quoting *In re Marriage of Schneider*, 82 Wn. App. 471, 476, 918 P.2d 543 (1996)).

We will not retry the facts on appeal and will accept findings of fact as verities if substantial evidence in the record supports them. *In re Marriage of Thomas*, 63 Wn. App. 658, 660, 821 P.2d 1227 (1991). We review conclusions of law to determine whether the trial court's findings of fact support them. *In re Marriage of Myers*, 123 Wn. App. 889, 893, 99 P.3d 398 (2004). As long as substantial evidence supports a finding, it does not matter that other evidence may contradict it. *In re Marriage of Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002). We

4

do not review the trial court's credibility determinations, nor can we weigh conflicting evidence. *In re Marriage of Rich*, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996).

## II. RCW 26.09.184

Bryan first argues that the parenting plan is not consistent with the objectives in RCW 26.09.184(1).[3] Specifically, he argues that there is evidence that Evelyn cannot maintain IE's emotional stability, that she cannot provide for IE's changing developmental needs, and that she exposed IE to harmful parental conflict. These arguments necessarily question the trial court's credibility determinations and the weight it gave conflicting evidence. Since we do not second guess a trial court's evaluation of conflicting evidence, we will not review these arguments.

## III. RCW 26.09.187(3)

Next, Bryan argues that the trial court erred when it concluded that the factors in RCW 26.09.187(3)(a) weigh in Evelyn's favor.[4] Because substantial evidence supports the trial court's findings regarding the statutory factors and the findings support the trial court's conclusion that the factors weigh in Evelyn's favor, we disagree.

---

[3] RCW 26.09.184(1) states that the objectives of a parenting plan are to provide for the child's physical care; maintain the child's emotional stability; provide for the child's changing needs; set forth each parent's authority and responsibilities; minimize the child's exposure to harmful parental conduct; encourage the parents to meet their responsibilities through agreements in the parenting plan; and otherwise protect the child's best interests.

[4] Bryan also argues that the trial court put undue emphasis on Evelyn's cultural heritage. This argument is not persuasive. Although the trial court found that IE speaks the same dialect and was raised by his maternal relatives in the same culture as Evelyn, Bryan fails to show that the trial court gave unreasonable weight to this finding. It was only one of many findings the trial court made in support of its conclusion that the statutory factors weigh in Evelyn's favor, and the trial court did not extensively discuss this finding or otherwise indicate that it gave this finding more weight than any other. Further, in its written ruling, the trial court mentioned this finding in connection with the fact that IE did not meet his paternal relatives until 2010. From this context, it appears that the trial court was considering IE's relationships with his extended family rather than his exposure to his parents' cultures.

5

RCW 26.09.187(3) lists criteria for determining residential placement under a parenting plan. The trial court must consider (1) the relative strength, nature, and stability of the child's relationship with each parent; (2) the parties' agreements; (3) each parent's past and potential for future performance of parenting functions; (4) the child's emotional needs and developmental level; (5) the child's relationship with siblings and other adults and his involvement with school and other activities; (6) the parents' wishes; and (7) the parents' employment schedules. RCW 26.09.187(3)(a). The trial court shall give the first factor the most weight. RCW 26.09.187(3)(a).

The trial court concluded that the statutory factors weigh in Evelyn's favor because she had the strongest and most nurturing relationship with IE, she had provided the majority of the parenting functions, and she was meeting IE's emotional and developmental needs and caring for his physical safety. There is substantial evidence in the record to support each of these findings, and the findings support the trial court's conclusion that primary residential placement should be with Evelyn.

First, there is substantial evidence that Evelyn had the strongest and most nurturing relationship with IE. Until the trial court entered the temporary parenting plan restricting Evelyn's custody, IE lived with her or her family and saw Bryan only during his occasional visits. Bryan argues that duration of care alone does not necessarily evidence a strong relationship, but the strength of Evelyn and IE's relationship is further evidenced by Dr. Rybicki's testimony that IE exhibits positive attachment to Evelyn.

Further, there is substantial evidence that Evelyn performed the majority of the parenting functions. For the first years of IE's life, Bryan lived in another country, leaving Evelyn to perform a majority of IE's parenting. Although Bryan contends that he has also performed

6

parenting functions, this argument goes to the trial court's credibility determinations and the weight it placed on evidence. We do not review credibility determinations or reweigh evidence on appeal.

There is also substantial evidence that Evelyn was meeting IE's emotional and developmental needs. Bryan's argument to the contrary is based on his testimony that IE was still taking a bottle at age four and that he initially had difficulty getting IE to eat. But, the trial record establishes that IE is now feeding himself and eating well, and the GAL testified that she was not concerned about IE's nutrition.

## IV. RCW 26.09.191(3)

Bryan next argues that the trial court erred when it found that Evelyn did not engage in alienation or abusive use of conflict. Because substantial evidence supports the trial court's finding, his argument fails.

Under RCW 26.09.191(3)(e), the trial court may limit the parenting plan if a parent's abusive use of conflict creates a danger of serious damage to the child's psychological development. Here, the trial court found that "[t]he mother is angry at the father but her actions do not establish abusive use of conflict or parental alienation." CP at 1047.

There is substantial evidence to support the trial court's finding. The GAL testified that she did not believe Evelyn was intentionally alienating IE and that she did not recommend any restrictions under RCW 26.09.191. Dr. Rybicki testified that, based on his observations, he saw nothing that concerned him about alienation or abusive use of conflict. Bryan presented e-mails evidencing Evelyn's attempts to alienate IE, but she denied responsibility for at least some of the e-mails. Evelyn twice violated the parenting plan, but the facts surrounding each violation were contested. We will not reweigh the evidence or make credibility determinations. Thus, despite

7

the presence of some contradictory evidence, substantial evidence supports the finding that Evelyn did not engage in alienation or abusive use of conflict.

## V. GAL RECOMMENDATIONS

Finally, Bryan argues that the trial court improperly disregarded the GAL's recommendations. He does not identify which recommendations the trial court disregarded nor does he provide any citations to the record. Although we need not consider arguments that are unsupported by reference to the record or authority, *see Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992), we briefly address Bryan's argument here and conclude that the trial court did not act improperly by disagreeing with the GAL's recommendations.

Bryan admits that "[t]he trial court remains free to ignore the recommendations made by the guardian ad litem if they are not supported by other evidence or it finds other testimony more persuasive." Appellant's Br. at 48 (citing *In re Guardianship of Stamm*, 121 Wn. App. 830, 836, 91 P.3d 126 (2004); *Fernando v. Nieswandt*, 87 Wn. App. 103, 107, 940 P.2d 1380 (1997)). Bryan appears to be challenging the trial court's decision to make Evelyn the primary residential parent despite the GAL's recommendation naming him as the primary residential parent.

Although the GAL recommended that Bryan be the primary residential parent, she stated that this was a very difficult situation. She also noted that her recommendation for Evelyn's paltry parental contact schedule was "only due to the distance between the parties." CP at 558. Her report mentions concerns regarding alienation, but she testified at trial that the issues may be cultural and that she did not make any recommendations on RCW 26.09.191 restrictions.

As we discussed above, Evelyn has performed the majority of IE's parenting. The statutory factors weigh in her favor, and there is substantial evidence supporting the trial court's

8

finding that she did not engage in abusive use of conflict or alienation. Substantial evidence supports the trial court's decision to make Evelyn the primary residential parent.

VI.    ATTORNEY FEES

A.    TRIAL

Bryan argues that the trial court erred by awarding attorney fees to Evelyn because it found her in contempt and she was intransigent. We review a statutory attorney fee award to determine if the trial court's decision was manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Coy*, 160 Wn. App. 797, 807, 248 P.3d 1101 (2011). Under RCW 26.09.160(2)(b)(ii), if the trial court determines that a parent has violated a court order in bad faith, it shall find the parent in contempt and shall order the parent to pay the moving party's costs and fees incurred as a result of the noncompliance. The trial court may also award attorney fees based on a party's intransigence as demonstrated by "litigious behavior, bringing excessive motions, or discovery abuses." *In re Marriage of Wallace*, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002).

Here, Evelyn requested $7,500 in attorney fees and the trial court awarded her $3,500. This amount included an offset for Bryan's fees for litigating the contempt motion. Bryan asked the court to reconsider the attorney fees, arguing that Evelyn was intransigent. The trial court declined, stating that Bryan had a greater ability to pay the fees.

Given the contested facts, the excessive motions, and the parties' financial positions, the trial court properly exercised its broad discretion in awarding attorney fees. Moreover, it subtracted the contempt fees from Evelyn's award in compliance with RCW 26.09.160(2)(b)(ii).

9

B.    APPEAL

Evelyn argues that we should award her attorney fees on appeal because she has a need and Bryan has the ability to pay. We have discretion to order a party to pay for the cost of maintaining the appeal and attorney fees in addition to statutory costs. RCW 26.09.140. When awarding attorney fees, we examine the arguable merit of the issues and the parties' financial resources. *In re Marriage of Griffin*, 114 Wn.2d 772, 779, 791 P.2d 519 (1990). The parties must file financial affidavits with the court no later than 10 days before oral argument. RAP 18.1(c). The parties did not file financial affidavits here; thus, we cannot evaluate the current financial resources of the parties, and we decline to award further fees. *In re Marriage of Johnson*, 107 Wn. App. 500, 505, 27 P.3d 654 (2001).

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Van Deren, J.

_____
Worswick, C.J.

10