FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 APR 24 AM 9: 18

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 74569-7-I |
| JOSEPHENE CHOI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| NATHAN CHOI, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 24, 2017 |

SCHINDLER, J. — Nathan Choi challenges the parenting plan, denial of the motion for relocation, and division of property. We affirm in all respects.

Nathan and Josephene Choi met in 1996 while Nathan was a law student at the University of Hawaii.[1] Nathan and Josephene married on May 5, 1997. Nathan graduated from law school in 1999. Nathan practiced law in Honolulu. Nathan focused on immigration law and also engaged in extensive "business dealings" with clients. Josephene worked as an administrative assistant and paralegal in his law office.

Nathan and Josephene had three children. A son, J.E.C., born in 2002; and two daughters, H.H.Y.C., born in 2004, and H.Y.U.C., born in 2007.

---

[1] We refer to the parties by their first names for purposes of clarity and mean no disrespect by doing so.

Nathan and Josephene purchased five condominiums in Honolulu and an apartment in Seoul, South Korea. In 2008, Nathan and Josephene purchased a commercial building in Tacoma, Washington, for $1.4 million.

In 2009, Nathan and Josephene decided to move to Bellevue, Washington. The couple purchased a house in Bellevue. Nathan and Josephene also purchased two condominiums in Bellevue. Nathan and Josephene enrolled their three children in school. Josephene played a larger role as the caregiver for the three children. Nathan obtained a license to practice law in Washington and practiced immigration law. They later sold one of the Bellevue condominiums.

On December 12, 2014, Nathan and Josephene filed a joint petition for dissolution of the marriage. Nathan prepared pleadings. The pleadings "greatly compromise[d] [Josephene's] property rights and expressly forfeit[ed] her parental rights." The petition for dissolution of the marriage stated the parties "already divided and separated their assets." The parenting plan stated, " 'Father shall have all parental rights of children. Mother shall have no parental rights.' " Josephene moved into the Bellevue condominium. Nathan stayed with the children in the Bellevue house.

Josephene retained an attorney and on February 18, 2015, filed an "Amended Petition for Dissolution of Marriage" and an amended parenting plan. Josephene asked the court to appoint a guardian ad litem (GAL) and enter a restraining order against Nathan. In opposition, Nathan filed a declaration accusing Josephene of "physically abus[ing] the children."

On March 12, a superior court commissioner entered an order appointing a GAL. The order states the children will remain with Nathan pending the GAL report. The

2

order gives Josephene unsupervised residential time with the children every other weekend. The order states neither parent shall "use physical discipline on the children."

On May 18, Nathan filed a "Notice of Intended Relocation of Children." Nathan stated he wanted to relocate to Hawaii with the children. According to Nathan, the relocation gives him "the best opportunity and support to practice law."

Josephene objected to the relocation. Josephene asserted the request to relocate the children was "not brought in good faith." Josephene argued that based on the RCW 26.09.520 factors, "the detrimental effects of allowing the children to move with the relocating person outweigh the benefits of the move to the children and the relocating person." Josephene states the children "are enrolled in wonderful schools. Our daughters are in a gifted program, and our son was able to enter International School, where the curriculum and teachers are among the best in the country." Josephene states, "The children are flourishing in their present environment at school." Josephene asserts, "A relocation to Hawaii, away from me, would be devastating for the children." According to Josephene, although Nathan "could make a great deal of money practicing law," he "chooses not to practice any more" and there is "no advantage to his moving to Hawaii for business reasons."

The GAL issued a report and addressed the motion to relocate. The GAL concluded, "Nathan's overriding interest" in relocating "has been himself and not his children."

> Nathan claims to be a religious person whose primary interest has been and is the children and their education. His statements ring hollow.
> For example, the children are enrolled in the highly rated Bellevue School District. Both before and at the beginning of this divorce process, Nathan was anxious to take the children and return to Hawaii to live. He prefers the weather in Hawaii and professes to dislike the Pacific

Northwest. He claims the children can have as good an education or better in Hawaii. But that would require enrolling the children in very expensive private schools. It is my opinion that Nathan's overriding interest has been himself and not his children.

The GAL concluded the "overriding concern about Josephene" is a history of physically disciplining the children. The GAL states that all three children told him that Josephene "hit" or "spanked" them. The GAL states Josephene "denied the extent of the physical abuse of the children" and said she was "simply disciplining the children more strictly than American parents."

In the report, the GAL states Department of Social and Health Services social worker Anna Pennington told him that the children "feel safe with their mother and that there is no current physical abuse occurring."

> Ms. Pennington related that Nathan keeps telling her that the children say that they are abused by their mother. Ms. Pennington told me that the children were frustrated with Nathan about him attempting to lead the discussion when she visited their home. Contrary to what Nathan had told me, Ms. Pennington indicated that the kids never told her that they are afraid of their mother. . . . She also related that when she spoke with the children in mid-August they reported that they feel safe with their mother and that there is no current physical abuse occurring with either their mother or father.

The GAL concluded it was "difficult" for him "to know after speaking with each parent whether the physical disciplining of the children was more than just parental disciplining of the children." The GAL recommended that neither parent "use corporal punishment or physically discipline the children." The GAL recommended that "pending the completion of the 2015-2016 school year," the children "continue to reside with their father" and "reside with their mother on alternate weekends."

Nathan, Josephene, and the GAL testified during the four-day trial on the dissolution and motion to relocate. The court admitted into evidence a number of exhibits.

Nathan testified that Josephene was "very abusive" and often hit the children to discipline them. According to Nathan, he "can't be a lawyer" in Washington because he did not "know the laws here" and the civil rules were "completely different." The court admitted into evidence a letter from a law firm in Honolulu offering to employ Nathan at an annual salary of $60,000.

Josephene testified the family moved to Bellevue "for [the] children's education" because Hawaii does not have a good public school system. Josephene testified the quality of life and the opportunities available to the children were "much better" in Washington than in Hawaii. Josephene testified that on average, Nathan made about $10,000 per month working as an attorney while they lived in Bellevue. Josephene testified that Nathan was the only one who wanted to return to Hawaii. Josephene stated that if Nathan were permitted to relocate to Hawaii with the children, she would not "have any relationship" with the children.

Josephene testified the allegations of physical abuse were not true. Josephene said she "didn't hurt" the children and "just disciplined them." Josephene admitted she hit J.E.C. "one time or two times" and hit H.H.Y.C. "[o]ne time."

The GAL testified that he "hesitantly" recommended the children reside with Nathan but was not "opposed to some sort of sharing or more residential time for Ms. Choi." In response to the question of whether he believed the court should impose parenting plan restrictions against Josephene under RCW 26.09.191, the GAL stated

5

there was "some question of whether or not and the degree of which there has been the physical disciplining." The GAL testified there was "no independent verification" of the alleged discipline and "in view of what I understood to be the Korean culture," the discipline could be "just regular parental disciplining of the children."

The GAL testified that Nathan should not be allowed to relocate with the children to Hawaii. The GAL testified he did not believe the request to relocate to Hawaii was made in good faith. According to the GAL, the "weather is the concern that draws Mr. Choi to want to return to Hawaii." The GAL said the schools in Bellevue were "probably preferable" to the schools in Hawaii and the children were doing well in school. The GAL said he believed Nathan's ability to practice law in Hawaii might be "restricted" because of his previous business transactions. The GAL testified that because immigration law is primarily federal law, Nathan "could practice here."

The court did not impose restrictions under RCW 26.09.191. The court notes the use of "corporal punishment on the children" as a concern. However, the court found that Nathan "clearly has exaggerated both the extent to which his wife used physical discipline on the children and his supposed contemporaneous disapproval."

The court entered a parenting plan designating Nathan as the residential parent and giving Josephene residential time with the children every other weekend from Friday after school until Monday morning.

The court found the motion to relocate was not made in good faith. The court denied Nathan's request to relocate to Hawaii with the children. The findings of fact and conclusions of law state, in pertinent part:

> The request [to relocate] is not one made in good faith if good faith is
> taken to encompass consideration of those [RCW 26.09.520] factors. The

children have equally strong bonds with both parents and it would be devastating for them to have the bond with their mother severed. There has been no prior agreement of the parties that such a move would be made. There are no RCW 26.09.191 restrictions on either of the parties. A move to Hawaii would not result in any enhancement of the children's opportunities and quality of life over what they have in their present circumstances. The Court is convinced that Mr. Choi can find employment (likely self-employment as in the past) here that is more favorable than the purported low-pay job offer in Hawaii. It is true that Skype and Facetime[2] have improved the quality of transoceanic communications . . . but consideration of the statutory factors does not produce a conclusion in favor of relocation. To the contrary, the Court concludes that the detrimental effect of the proposed relocation would outweigh any benefit of the change to the children and the father.

The court awarded the house in Bellevue and the apartment in South Korea to Nathan. The Court awarded the five condominiums in Hawaii and the condominium in Bellevue to Josephene. The Court ordered the Tacoma commercial building sold and the proceeds distributed 60 percent to Josephene and 40 percent to Nathan.

Nathan filed a notice of appeal on January 14, 2016. Nathan challenges the decision not to impose parenting plan restrictions under RCW 26.09.191, denial of the request to relocate, and the award of property.[3]

Motion to Strike

Nathan filed a motion to strike the supplemental designation of the pleadings that Josephine filed. Josephine designated the May 19, 2016 "Petition for Order for Protection"; the May 19, 2016 "Temporary Order for Protection and Notice of Hearing"; and the July 21, 2016 "Order for Protection."

---

[2] Skype and Facetime are live video chat and long-distance voice calling services.

[3] The reply brief was due on January 31, 2017. We strike the 55-page reply brief filed on April 11, 2017 as untimely. In re Disciplinary Proceeding Against Donohoe, 90 Wn.2d 173, 174-75, 580 P.2d 1093 (1978) (striking reply brief as untimely).

7

The Petition for Order for Protection states Nathan was arrested on May 18, 2016 for assaulting J.E.C. and J.E.C. had "a concussion discovered after a CT[4] scan."[5] Josephine states Nathan "threatened to kill me while in Hawaii" and she is "afraid that [Nathan] will retaliate against me and the children for calling 911."

The Order for Protection prohibits Nathan "from coming near and from having any contact whatsoever" with Josephine and the three children.[6] The Order for Protection suspends the parenting plan and gives Josephine "temporary care, custody, and control" of the children. The Order for Protection states the order is effective until July 21, 2017.

A commissioner directed the parties to address the motion to strike in briefing and referred the motion to the panel. Josephine argues in her brief that because the Order for Protection prohibits Nathan from having any contract with the children until July 21, 2017, the argument that the court erred by not imposing RCW 26.09.191 restrictions and denying the motion to relocate are moot.

A party may supplement the appellate record if the initial record is not sufficiently complete to permit a decision on the merits of the issues presented for review. RAP 9.6(a), .10. Because absent review of the pleadings we cannot determine if the appeal of the parenting plan and motion to relocate is moot, we deny Nathan's motion to strike the supplemental designation of clerk papers. " 'A case is moot if a court can no longer

---

[4] Computerized tomography.

[5] The Petition for Order for Protection states, in pertinent part:
Nathan Choi was arrested on May 18, 2016 after hitting our son, [J.E.C.,] on the head or slamming his head against the wall. [J.E.C.] was taken to Overlake Hospital emergency. I picked up [H.Y.U.C.] and [H.H.Y.C.], who are staying with me and should not be returned to their father[']s residence.

[6] The Order for Protection states, "The police reports corroborate the children's statements and father changes his story as he testifies. The mother's allegations are supported and credible."

provide effective relief.' " In re Marriage of Horner, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (quoting Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984).[7]

Because the Order for Protection suspends the parenting plan until only July 21, 2017, the appeal of the parenting plan and motion to relocate is not moot. We also note the "Order on Adequate Cause for Non-parent Custody" states the July 21, 2016 Order for Protection and the contrary parenting plan provisions designating Nathan as the residential parent establish adequate cause to "move forward to a full hearing or trial." The Order on Adequate Cause requires the parties to obtain a parenting plan evaluation and to file a motion for a hearing or trial.[8]

Parenting Plan

Nathan argues the court erred by not imposing mandatory parenting plan restrictions under RCW 26.09.191(1) and (2) based on Josephene's use of corporal punishment. We review parenting plan decisions for manifest abuse of discretion. In re Marriage of Black, No. 92994-7, 2017 WL 1292014, at *6 (Wash. April 6, 2017); In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014); In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). A trial court abuses its discretion only if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Black, 2017 WL 1292014, at *6; Katare, 175 Wn.2d at 35. Nathan bears the " 'heavy burden of showing a manifest abuse of discretion.' " In re Marriage of Kim, 179

---

[7] Nathan also filed a motion to strike Josephene's statement of the case for violation of RAP 10.3. A commissioner referred the motion to the panel. To the extent that Josephene's factual assertions are not supported by the record, we do not consider those assertions.

[8] Nathan filed a motion to supplement the record with an unrelated August 17, 2016 police report concerning an investigation of alleged sexual abuse. The names of the alleged victim and the suspect are redacted. Because the motion to supplement the record does not meet the requirements of RAP 9.11(a), we deny the motion. See Auto. United Trades Org. v. State, 175 Wn.2d 214, 235 n.5, 285 P.3d 52 (2012).

Wn. App. 232, 240, 317 P.3d 555 (2014) (quoting In re Marriage of Landry, 103 Wn.2d 807, 809, 699 P.2d 214 (1985)).

"We treat the trial court's findings of fact as verities on appeal so long as they are supported by substantial evidence." Black, 2017 WL 1292014, at *6; In re Marriage of Thomas, 63 Wn. App. 658, 660, 821 P.2d 1227 (1991). Evidence is substantial when it is sufficient to " 'persuade a fair-minded person of the truth of the matter asserted.' " Black, 2017 WL 1292014, at *6 (quoting Chandola, 180 Wn.2d at 642); In re Marriage of Burrill, 113 Wn. App. 863, 868, 56 P.3d 993 (2002). "So long as substantial evidence supports the finding, it does not matter that other evidence may contradict it." Burrill, 113 Wn. App. at 868. This court does not review the trial court's credibility determinations or weigh conflicting evidence. Black, 2017 WL 1292014, at *6; In re Marriage of Meredith, 148 Wn. App. 887, 891 n.1, 201 P.3d 1056 (2009); In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996). Unchallenged findings are verities on appeal. In re Marriage of Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999).

RCW 26.09.191(1) and (2) are mandatory provisions that require the imposition of restrictions in a parenting plan. RCW 26.09.191(1) prohibits the court from requiring mutual decision-making or dispute resolution other than court action if a parent has physically abused a child or has a history of domestic violence. RCW 26.09.191(2)(a)(ii) requires the court to limit a parent's residential time with a child if the parent has physically abused the child.

The record supports the court's decision not to impose parenting plan restrictions on Josephene under RCW 26.09.191(1) or (2). "Mere accusations, without proof, are not sufficient to invoke the restrictions under the statute." In re Marriage of Caven, 136

Wn.2d 800, 809, 966 P.2d 1247 (1998). The court's unchallenged findings establish Nathan "exaggerated . . . the extent to which his wife used physical discipline on the children." As to the RCW 26.09.191 restrictions, the GAL testified there was a question about the degree of physical discipline. The GAL testified that "in view of what I understood to be the Korean culture," Josephene's use of corporal punishment could be "just regular parental disciplining of the children." The GAL said he did not "know for sure whether there was the domestic violence by Ms. Choi." Substantial evidence supports the decision not to impose restrictions under RCW 26.09.191(1) or (2).

Nathan relies on In re Marriage of C.M.C., 87 Wn. App. 84, 940 P.2d 669 (1997), to argue the court erred in not imposing parenting plan restrictions under RCW 26.09.191(1) and (2). C.M.C. does not support his argument. In C.M.C., we held imposition of restrictions under RCW 26.09.191(1) requires finding a history of domestic violence. C.M.C., 87 Wn. App. at 86. The court held that although a "history of domestic violence" under RCW 26.09.191(1) is not defined, the phrase is "intended to exclude 'isolated, de minimus incidents which could technically be defined as domestic violence.' " C.M.C., 87 Wn. App. at 88 (quoting 1987 PROPOSED PARENTING ACT, REPLACING THE CONCEPT OF CHILD CUSTODY, Commentary and Text 29 (1987)). Here, unlike in C.M.C., the court did not find there was a history of physical abuse or domestic violence.

Relocation

Nathan contends the court erred in denying his request to relocate to Hawaii with the children. We review denial of a motion for relocation for abuse of discretion. Horner, 151 Wn.2d at 893. Under the child relocation act (CRA), RCW 26.09.405

through .560, "[t]here is a rebuttable presumption that the intended relocation of the child will be permitted." RCW 26.09.520. The burden of persuasion and the burden of production are on the parent opposing relocation. In re Marriage of McNaught, 189 Wn. App. 545, 556, 359 P.3d 811 (2015). To rebut the presumption, the parent must demonstrate that "the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person." RCW 26.09.520. To "ensure that trial courts consider the interests of the child and the relocating person within the context of the competing interests and circumstances required by the CRA," trial courts "must consider each of the child relocation factors." Horner, 151 Wn.2d at 895; RCW 26.09.520.[9] But the factors are "not weighted" or listed in any particular order. RCW 26.09.520; Horner, 151 Wn.2d at 894. The factors "serve as a balancing test between many important and competing interests and circumstances involved in relocation

---

[9] The factors the court must consider are:

    (1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;

    (2) Prior agreements of the parties;

    (3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;

    (4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;

    (5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;

    (6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;

    (7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;

    (8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;

    (9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;

    (10) The financial impact and logistics of the relocation or its prevention; and

    (11) For a temporary order, the amount of time before a final decision can be made at trial.

RCW 26.09.520.

matters." Horner, 151 Wn.2d at 894. "In absence of evidence to the contrary, we assume the trial court discharged its duty and considered all evidence before it." In re Marriage of Croley, 91 Wn.2d 288, 291, 588 P.2d 738 (1978).

Nathan argues the court erred by ignoring the statutory presumption in favor of allowing him to relocate with the children and improperly focusing on the best interests of the children. Contrary to his argument, the record shows the court considered the rebuttable presumption and complied with the relocation statute. The GAL testified that under the CRA, there is a presumption that the residential parent will be permitted to relocate but "the other parent can rebut that presumption." The parties also addressed the rebuttable presumption in both opening and closing arguments. The court specifically found, "[T]he detrimental effect of the proposed relocation would outweigh any benefit of the change to the children and the father."[10]

Nathan also asserts the court did not address statutory factors 3, 6, 8, and 9 of RCW 26.09.520 and the record does not support the court's findings. We disagree. The court entered findings on each of the statutory factors, including factors 3, 6, 8, and 9, and substantial evidence supports the court's findings.

With respect to factors 1 and 3, the court found, "The children have equally strong bonds with both parents and it would be devastating for them to have the bond with their mother severed." Regarding factor 2, the court's unchallenged findings establish "[t]here has been no prior agreement of the parties that such a move would be made." With respect to factor 4, the findings state, "There are no RCW 26.09.191 resections on either of the parties."

---

[10] Emphasis added.

13

Regarding factors 5 and 6, the court found, in pertinent part:

> [T]he father's desire to move to Hawaii reflects his own personal desire and would disregard the children's wishes and their best interests. The request is not one made in good faith if good faith is taken to encompass consideration of those factors.

As to factors 6 and 7, the court found, "A move to Hawaii would not result in any enhancement of the children's opportunities and quality of life." Regarding factor 8, the court's unchallenged findings acknowledge, "Skype and Facetime have improved the quality of transoceanic communications." With respect to factors 7, 9, and 10, the court found, "Mr. Choi can find employment (likely self-employment as in the past) here that is more favorable than the purported low-pay job offer in Hawaii."

Substantial evidence supports the findings. According to the GAL, it is "clear" that Josephene "is far more involved with [H.H.Y.C. and H.Y.U.C] than their father." The GAL states it is "clear from conversations with the children that their mother had been the primary caregiver handling matters on a day-to-day basis."

Josephine testified Nathan did not make "the request to relocate the children in good faith" because "only he wants [to] go back" to Hawaii. The GAL testified it was Nathan's "decision and desire to go back to Hawaii" and "the weather is the concern that draws Mr. Choi to want to return to Hawaii." The GAL report states, "Nathan's overriding interest has been himself and not his children."

The unchallenged findings establish the children "are all enrolled in the excellent public schools of Bellevue and are doing well." Josephene testified the quality of life and the opportunities available to the children are "much better" in Washington, and Seattle has "[many] more opportunities" than Hawaii. Josephene testified the family moved to Bellevue "for [the] children's education" and Hawaii does not have a good

14

public school system. The GAL testified the children are doing well in school and "like where they are," and the schools in Bellevue are "probably preferable" to the schools in Hawaii. Nathan admitted that the schools in Bellevue are "slightly better" than the schools in Hawaii.

The court's unchallenged findings establish Nathan "obtained a license to practice law in Washington and he has done so." A law firm in Hawaii offered to pay Nathan an annual salary of $60,000. But the testimony established Nathan earned approximately $10,000 a month working as an attorney in Bellevue. The GAL testified that because Nathan practices immigration law, "he could practice here as well as he could practice in Hawaii."

The court did not abuse its discretion in denying Nathan's request to relocate to Hawaii.

Property Distribution

Nathan argues the court erred by awarding the five Hawaii condominiums to Josephene. The court divides property and distributes the parties' property in a manner that is "just and equitable." RCW 26.09.080. The statute requires the trial court to consider all relevant factors including, but not limited to, the following:

> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage . . . ; and
> (4) The economic circumstances of each spouse . . . at the time the division of property is to become effective, including the desirability of awarding the family home . . . to a spouse . . . with whom the children reside the majority of the time.

RCW 26.09.080.

We review the division of property for abuse of discretion. <u>In re Marriage of Muhammad</u>, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). The trial court has "broad discretion in distributing the marital property" and its decision will be reversed only if exercised on untenable grounds or for untenable reasons. <u>In re Marriage of Rockwell</u>, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). "The trial court is in the best position to assess the assets and liabilities of the parties" and to determine what constitutes an equitable outcome. <u>Brewer</u>, 137 Wn.2d at 769.

Here, the court concluded the children should remain in the family home in Bellevue and awarded the house, valued at $1.2 million, to Nathan. "The family residence in Bellevue . . . has long been home to the children and should remain so. It is valued at $1,200,000 and will be awarded to the husband." The court did not abuse its discretion by awarding the five Hawaii condominiums valued at a total of $1,227,000 to Josephene.

We affirm in all respects.

Spearman, J.

WE CONCUR:

Dwyer, J.

Appelwick, J.